### UNITED STATES of America,

v.

### The LaROUCHE CAMPAIGN, Independent Democrats for LaRouche, Campaigner Publications, Inc., Caucus Distributors, Inc., Lyndon H. LaRouche, Paul Goldstein, Jeffrey Steinberg, Michelle Steinberg, Robert Greenberg, Edward Spannaus, John Scialdone, National Caucus of Labor Committees, Defendants.

### Crim. No. 86–323–K.

United States District Court, D. Massachusetts.

April 20, 1988.

Odin P. Anderson, Anderson & Associates, P.C., Boston, Mass., for Lyndon LaRouche, Jr.

Michael W. Reilly, Hausserman, Davison & Shattuck, Boston, Mass., for Nat. Caucus of Labor Committees.

Daniel S. Alcorn, Fensterwald & Alcorn, Arlington, Va., for Paul Goldstein.

Matthew H. Feinberg, Boston, Mass., for Caucus Distributors, Inc. and Campaigner Publications, Inc.

William B. Moffitt, William B. Moffitt & Associates, Alexandria, Va., for Jeffrey Steinberg.

Thomas Shapiro, Shapiro & Grace, Boston, Mass., for The LaRouche Campaign and Independent Democrats for LaRouche.

Mayer Morganroth, Southfield, Mich., for Edward Spannaus.

Robert F. Collins, Braintree, Mass., for Robert Greenberg.

James E. McCall, Boston, Mass., for John Scialdone.

William Cummings, Alexandria, Va., for Michelle Steinberg.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This Memorandum addresses issues regarding application of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. §§ 1–16. Circumstances leading to the occasion for applying CIPA in the present case, and for interrupting jury trial in the case to do so, were stated in a Memorandum and Order of the court filed on April 8, 1988.

### I.

Pursuant to 18 U.S.C.App. § 5, defendants filed a motion before trial serving notice of intent to disclose classified information. The government seasonably responded that none of the documents at-

tached to defendants' motion was classified.

Defendants also have contended at various additional points during pretrial and trial proceedings that government obligations of disclosure extended to classified information and required application of CIPA. In each such instance occurring before the 55th day of trial, however, the court determined after *ex parte in camera* examination of all undisclosed materials in the files examined (including undisclosed parts of documents disclosed in redacted form) that those materials did not include anything as to which a disclosure requirement applied. For that reason, it was not necessary or appropriate in those instances to invoke CIPA and its special procedures.

For reasons stated in the Memorandum and Order of April 8, 1988, arising from information first disclosed to defendants and the court on and after the 55th day of trial, it has become necessary during trial to apply CIPA in this case.

## II.

A threshold issue is presented by a dispute as to whether the court should proceed first under section 4 of CIPA (as the government contends) or instead bypass section 4 and proceed solely under sections 5 and 6 (as the defendants contend). Defendants have requested that the court immediately invoke section 6 and require the government to establish procedures for authorization for defense counsel to receive classified information under protective orders, so defendants may have the benefit of the advocacy of their attorneys (informed by their access to the classified materials) bearing upon determinations by this and higher courts of issues concerning alleged relevance of classified information to the issues in this case and to governmental obligations of disclosure. The government contends that sections 5 and 6 apply to classified information already in the hands of defense counsel or required to be disclosed to them if the prosecution is to proceed; section 4 applies, the government contends, and not sections 5 and 6, where defendants seek access to classified infor-

mation in the possession of the government that is claimed by the government not to be subject to an order of disclosure.

The parties were invited to and did file written submissions on this subject on or before April 8, 1988. The defense submission calls attention to legislative history argued to be relevant, and to an Order issued in *United States v. Poindexter*, Criminal No. 88–0080 (D.D.C. Apr. 6, 1988) (Gesell, D.J.) (determining that a protective order proposed by the government "is far too complex, lacks definite time restrictions and creates undue obstacles to the fair and expeditious disposition of this case," and scheduling a prompt pretrial conference for "discussion with the parties" and court determination of "the timing of discovery disclosures in relation to a realistic trial date," including inquiry, among other things, into "the extent to which all documents intended to be offered by the Independent Counsel on the case in chief, documents containing *Brady* material, documents obtained from defendants, and documents heretofore requested by defendants will be made available immediately for *in camera* inspection by defendants and their counsel").

Citing no decision other than Judge Gesell's Order of April 6, 1988, and his subsequent rulings, defendants argue that this court should immediately adopt a procedure similar to that initiated by Judge Gesell. Defendants fail entirely, however, to show that the circumstances before Judge Gesell are materially like those before this court.

The defense Memorandum Regarding CIPA Procedure did not refer to a First Circuit opinion, *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir.1984), and their efforts to distinguish it in subsequent oral argument have been unpersuasive.

■ Even if *Pringle* may be distinguished factually, its explicit rationale controls the present case. Here, as in *Pringle*, none of the defendants now possesses the classified information at issue. Instead, defendants seek an order of disclosure of materials they do not now have. In these circumstances, under the rationale of *Prin-*

*gle,* the government has properly invoked section 4 of CIPA.

## III.

■ Defendants have argued both orally and in written submissions that the court should hold that the government is barred from invoking the procedures of section 4 of CIPA because of its failure to do so before trial commenced. This contention must be rejected for several independent reasons, stated in Parts A–C, below.

### A.

When it is read as a whole, CIPA plainly manifests a congressional intent to protect classified information from *any* disclosure incident to court proceedings, at whatever stage of trial, other than such disclosures as are provided for in CIPA to give full protection to the rights of defendants. The restrictions against disclosure are not aimed at allowing prosecutors (or defendants) any form of advantage in the criminal trial; they are aimed at protecting classified information in a way that does not impair the rights of defendants in a criminal trial. A court is obligated to respect the manifested congressional intent and apply the act accordingly. The defense contention that the government should be barred from invoking section 4 is thus contrary to a fundamental aim of CIPA.

A reading of CIPA that emphasizes the manifest intent to protect classified information is reinforced by the fact that CIPA provides that no trial court order for disclosure of classified information can become effective, over government opposition, before the government has had an opportunity to take the matter to a higher court on appeal. If the government objects to an order of disclosure, under either section 4 or section 6, it has a right to interlocutory appeal. *See* 18 U.S.C.App. § 7(a). If, on the other hand, the court denies a defense request for an order of disclosure and, on appeal after verdict, a higher court vacates that ruling (either reversing a conviction because of the nondisclosure, or ordering disclosure and remanding for the completion of further proceedings before a deter-

mination is made regarding reversal of the conviction), no disclosure of classified information will have been made before a determination by a higher court rather than by a single trial judge. No authority is provided in CIPA for a single judge ever to make and immediately enforce an order for disclosure (even to counsel alone, under a protective order) of classified information over government opposition.

Also, the government's position regarding declassification and limited disclosure under protective order is to be determined by a government agency other than the prosecutorial team. This interpretation of the Act is confirmed by the requirement, stated in the Security Procedures Established Pursuant to Pub.L. No. 96–456, § 9, that even as to security *procedures,* "[a]ny question concerning the interpretation of any security requirement contained in those procedures shall be resolved by the court in consultation with the Department of Justice Security Officer and the appropriate Executive Branch agency security officer."

A trial judge may enter orders that force upon government counsel a choice among limited alternatives to pursue an interlocutory appeal, or obtain agency authorization for disclosure, or suffer consequences adverse to the government's position in the criminal prosecution. That is to be done by a court upon a determination that such an order is essential to the protection of the rights of a defendant to a fair and speedy trial.

Regardless of the time when the issue comes to the court's attention—whether before, during, or after trial—it would be fundamentally inconsistent with the intent Congress has manifested in CIPA regarding protection of classified information for a trial judge to bypass the provisions of section 4 regarding the procedures for determining whether documents not previously disclosed to defendants or their counsel should be disclosed pursuant to any discovery obligation.

### B.

It is true, as defendants point out, that references appear in the legislative history

of CIPA to a legislative purpose of "minimiz[ing] of so-called graymail—a threat by the defendant to disclose classified information in the course of trial—by requiring a ruling on the admissibility of the classified information *before trial.*" S.Rep. No. 823, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 4294, 4295 (emphasis added) (hereinafter "Senate Report No. 96–823").

The legislative history also includes references, however, to proceedings during trial—an example being the allowance of a defense motion for discovery "during the course of trial if the prosecution presents a matter not originally suggested by indictment or for which the defendant could not fairly have been expected to be on notice at the time of the omnibus procedure [prescribed as a special pretrial proceeding]." *Id.* at 4296 (quoting from recommendations of the Intelligence Committee's Subcommittee on Secrecy and Disclosure). Another passage in Senate Report No. 96–823 calls attention to the fact that the "bill attempts to deal with the 'graymail' problem" by requiring that a defendant who intends to disclose classified information at pretrial or in trial

> notify the Government prior to trial, *when possible.* The Government can then move for a hearing to determine whether the information can indeed be disclosed by the defendant in the course of a trial. Following such a hearing, *which would ordinarily be before trial,* the court determines whether and the manner in which the information at issue may be used in a trial or pretrial proceeding. . . .

*Id.* at 4297–98 (emphasis added). Thus, the legislative history, read as a whole, does not support the defense contention that the government is barred from invoking some provisions of the Act, and section 4 in particular, unless it makes its request of the court before trial commences.

My conclusion as to the significance of the legislative history is supported by the statute as enacted, which draws no rigid distinctions between proceedings before trial and during trial. Section 7(a), for example, authorizes the government to appeal an order of the district court "before or after the defendant has been placed in jeopardy." And section 7(b) explicitly provides procedures for an expedited appeal "[i]f an appeal is taken during trial."

## C.

Precedents that ordinarily insulate the government from having doctrines of waiver and estoppel invoked against it reinforce the conclusion that CIPA is not properly interpreted as barring the government from invoking section 4 of CIPA because it failed to do so before trial commenced. *See, e.g., United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (holding that *"Parklane Hosiery*'s approval of nonmutual offensive collateral estoppel is not to be extended to the United States"); *Federal Crop Insur. Corp. v. Merrill,* 332 U.S. 380, 383, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) (holding that the United States, as crop insurer, is not bound by representations of its agents as to scope of insurance coverage in circumstances in which a private insurance company would have been bound).

For the foregoing reasons, I conclude that section 4 of the Act applies to the present circumstances in this case.

## IV.

On April 14, 1988, the government filed its Second Amended Proposed Admission of Relevant Facts that Classified Documents Would Tend to Prove.

At the hearing of April 15, 1988, the court determined that, pursuant to rulings previously made orally and explained in Parts I–III of this Memorandum, the classified files to which the government's proposed admission relates should be examined *in camera* by the court alone, for the purpose of determining what action to take with respect to the proposed admission. At the afternoon session on April 15, the *in camera* examination having been completed, the court ordered, pursuant to section 4 of CIPA, that the government be authorized to substitute, in lieu of disclosure of classified documents (marked for identifica-

tion as Items CCC, DDD, EEE, FFF, GGG, and PPP and held in custody subject to further order of this or a higher court, by James Walker, designated by this court as Court Security Officer pursuant to Security Procedures Established Pursuant to Pub.L. No. 96–456, § 2), the Second Amended Proposed Admission of Relevant Facts That Classified Documents Would Tend to Prove, filed April 14, 1988. This order was made upon a finding that this admission of relevant facts as fully protects all rights of defendants as would the disclosure of the classified documents for which it is authorized to be filed as a substitute. In making this finding, the court took into account all of the theories of relevance addressed in the Memorandum and Order of April 8, 1988, and all the theories argued by defense counsel orally and in written submissions, including the submission filed on the morning of April 15, 1988. These theories of relevance included not only theories of relevance to issues at trial but also additional theories of relevance to issues presented in the evidentiary hearing on defense motions for sanctions.

### V.

On April 15, 1988, immediately following the announcement of the court's ruling described in Part IV, defendants gave notice pursuant to section 5 of CIPA of their intent to cause the disclosure of classified information. Defendants contend that a section 6 hearing is appropriate to resolve the issues posed by the section 5 notice. Defendants further contend that section 6 provides for an *in camera*, but not *ex parte,* hearing at which cleared defense counsel get access to classified information under a protective order. The substance of defendants' notice was that they intended to cross-examine FBI agent Llewelyn and reasonably expected to elicit answers containing classified information.

It is clear that the court's determination (in Part IV) that the government's Second Amended Proposed Admission of Relevant Facts is an adequate substitute for disclosure of the classified documents at issue is not dispositive of the questions presented by defendants' notice under section 5. Sec-

tion 4 procedures govern only the issue of disclosure to defendants of *documents.* Nevertheless, I reject defendants' contentions to the extent that they seek to absolutely require the government to disclose any classified information to defense counsel.

The government is not obligated to respond in any particular way to a motion by defendants pursuant to section 5. Although the government normally might be expected to request a hearing pursuant to section 6(a), it is by no means incumbent upon the government to do so. The government may take the position that none of the information noticed by defendants pursuant to section 5 is classified. This was the government response to defendants' pretrial motion pursuant to section 5. Alternatively, the government may question the sufficiency of defendants' notice; in which case "no Section 6 hearing should be held until the sufficiency of the 5(a) notice ... has been determined." *United States v. Collins,* 720 F.2d 1195, 1200 (11th Cir.1983).

The above discussion makes clear, contrary to the contention of at least some defense counsel, that neither the government, by motion, nor the court, *sua sponte,* ought to begin a section 6 hearing for no other reason than that defendants have given notice of intention to cause the disclosure of classified information.

■ On April 19, 1988, defendants began the cross-examination of FBI agent Llewelyn. The government objected on grounds that the information sought was irrelevant and classified. At this point, defendants renewed their contentions that a section 6 hearing was appropriate, arguing that the government had *de facto* invoked section 6 by objecting, and that the classified information should be made available to defense counsel under a protective order. I conclude that insofar as defendants' motion seeks a hearing (which their motion characterizes as a "Section 6 hearing") in which the court would not examine any document or consider any proffer of testimony *ex parte,* the motion must be denied.

In the sense in which defendants use the phrase, a "Section 6 hearing" has not been shown to be appropriate or even authorized by CIPA. Section 8(c), by its terms, explicitly addresses the case of a government objection to a question that may require the witness to disclose classified information. In so doing, section 8(c) does not provide for any "hearing" of the kind defendants seek. Rather, it provides that "the court *shall take such suitable action* to determine whether the response is admissible *as will safeguard* against the compromise of any classified information...." *Id.* (emphasis supplied). I conclude that in fashioning "suitable action" the court may invoke procedures explicitly described elsewhere in the Act (including those referred to in section 6) as well as any other procedures the court may fashion that are consistent with the terms and objectives of the Act. It does not matter whether the label "Section 6 hearing" or instead a label such as "Section 4 hearing" or "Section 8 hearing" is applied. The manifest objectives of CIPA as a whole remain the same in any event, and the validity and appropriateness of the hearing are determined by its real characteristics rather than by labels attached either by the parties or by the court.

One manifest objective of CIPA is that defendants not be prejudiced by the fact that information material to their defense happens to be classified. *Cf. Collins,* 720 F.2d at 1199. The most explicit statement of this objective appears in section 6, which states that the court shall approve a statement or summary in lieu of disclosure of classified information in open court only where to do so would "provide the defendant with substantially the same ability to make his defense as would *disclosure* of the specific classified information." This manifest objective of CIPA governs regardless of whether section 6 or section 4 or section 8 formally applies. (Indeed, I have previously applied the same standard in making the section 4 determination in Part IV regarding *disclosure obligations for discovery purposes.)*

A second manifest objective of CIPA is that classified information should not be disclosed to anyone needlessly—that is,

should not be disclosed unless necessary to a defendant's right to a fair and speedy trial. *Cf. Collins,* 720 F.2d at 1197. In other words, when classified information is not yet in the hands of defendants and their attorneys and they are making demands for disclosure, the court must consider whether defendants' rights can be fully protected by an alternative procedure that does not result in disclosure of classified information.

Thus, even if section 6 rather than section 8 were held to apply, the court would still be required to consider whether some restrictions should be placed on disclosure of classified materials where the rights of defendants to a fair trial can be protected in some other way.

This construction of CIPA is confirmed by the legislative history, which states:

> If the Government has not previously made the [classified] information available to the defendant, the Government may describe the information by generic category approved by the court. Thus, the Government would not have to disclose the identity of an undercover intelligence agent not previously disclosed to the defendant; instead, the Government would describe the information as 'the identity of an undercover intelligence agent' if this meets with court approval.

Senate Report No. 96–823 at 4301. Commenting on paragraph (c)(1)(B) of section 6, the Report adds:

> [T]he defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without this Act. At the same time, if there is no prejudice to the defendant's right to a fair trial as a result of the substitutions [provided for in (c)(1)(B)], they are clearly preferable to disclosing information that would do damage to the national security....

*Id.* at 4302.

## VI.

Defense counsel have argued that "disclosure" as used in relevant provisions of CIPA refers to "public disclosure" and that

the court need do no more than enter a protective order prohibiting "public disclosure" without court permission before ordering that documents containing classified materials be made available for examination by defense counsel.

A close examination of CIPA as a whole does not support this defense contention. "Disclosure" is not one of the terms defined in section 1 of CIPA. It first appears in the Act in the definition of "classified information," which means "any information or material that has been determined ... to require protection against unauthorized disclosure for reasons of national security...." 18 U.S.C.App. § 1. A natural reading of "disclosure" in this context includes not only a "public disclosure" that would occur by use of material in a court proceeding open to the public but as well private disclosure, when not authorized. Section 3 provides for protective orders "against the *disclosure* of any classified information *disclosed* by the United States to any defendant...." (Emphasis added.) The use of "disclosed" to describe what occurs when the United States makes the information available to a defendant otherwise than by use in open court plainly implies that "disclosure" is not meant to apply only to use in open court. Also, the authorization for an order "against the [further] disclosure" of information "disclosed" to a defendant must surely be interpreted as an authorization for an order prohibiting not only "public disclosure" but also private disclosure to anyone other than persons identified by the court order as authorized to receive the information. These indications that "disclosure" extends beyond "public disclosure" by use at trial are reinforced by the context of use of the term in section 5, requiring that "[i]f a defendant reasonably expects to disclose or to cause the disclosure of classified information *in any manner in connection with* any trial or pretrial proceeding ...," the defendant shall give notice.

I conclude that, in proceeding either under section 4, or under section 6, or under section 8, or under any combination of those sections, a court may determine that an alternative means of protecting defendants' rights in lieu of disclosure even to defendants or their counsel is appropriate. For example, under section 4 a court, "upon a sufficient showing may authorize the United States ... to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." Similarly, under section 6(c)(1), the court may grant a government motion for substitution of a statement admitting relevant facts or a summary of specific classified information if the court "finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." And, under section 8, the court may fashion procedures that constitute "such suitable action" "as will safeguard" against disclosing classified information while also fully protecting the rights of defendants.

### ORDER

For the foregoing reasons, it is ORDERED:

The court denies defendants' oral motion for a CIPA "Section 6 hearing" in the sense of a hearing in which (a) no classified document would be examined by the court *ex parte,* and (b) no proffer of testimony including classified information would be considered by the court *ex parte.* The court allows the defendants' oral motion for a "Section 6 hearing" only to the extent that, and only in the sense that, in determining whether a classified document or classified information that would be included in testimony is relevant to any issue at trial or any issue in the evidentiary hearing now occurring and, if so, what order should be entered, the court may invoke procedures referred to in section 6, as well as those referred to in sections 4 and 8, where doing so would serve the manifest objectives of CIPA of fully protecting the rights of defendants to a fair and speedy trial without disclosing classified information.