RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0254p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

SIROUS ASGARI,

*Defendant-Appellee*.

Nos. 19-3648/3657

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:16-cr-00124-1—James S. Gwin, District Judge.

Decided and Filed: October 4, 2019

Before: BATCHELDER, SUTTON, and DONALD, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Steven L. Lane, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Om M. Kakani, Daniel J. Riedl, Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellant. Stephen C. Newman, Catherine J. Adinaro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellee.

───────────────

**OPINION**

───────────────

SUTTON, Circuit Judge. In this case, federal prosecutors asked the district court for permission to withhold classified information from defense counsel for Sirous Asgari, an Iranian scientist charged with theft of trade secrets. The court initially granted the government's request because the information was not relevant to the charges. But after Asgari moved for reconsideration on the ground his defense counsel had a top-level security clearance, the court

changed its mind and ordered the information's disclosure to counsel. Because the court's first answer was the right answer, we reverse.

An Iranian scientist who worked for a time at Case Western, Asgari faces criminal charges for stealing trade secrets and committing visa and wire fraud. A month before his trial date, he learned that the government intended to withhold classified information from discovery. Consistent with the Classified Information Procedures Act of 1980, 18 U.S.C. app.3 § 1 et. seq, the district court reviewed the information and concluded that none of it would help Asgari. It thus allowed the government to withhold the information.

Asgari moved for reconsideration, asserting that his counsel held a top secret/sensitive compartmented information security clearance. With this fact in hand, the district court thought it could balance the government's and Asgari's interests in a more refined way. It ordered the government to disclose to defense counsel the material it had previously declared irrelevant. The government filed a notice of appeal and an emergency motion for a stay. We granted the stay and now consider the appeal (as required by statute) on an expedited basis. 18 U.S.C. app.3 § 7(b).

Asgari claims that we lack jurisdiction to hear this interlocutory appeal. The Classified Information Procedures Act says otherwise. *Id.*

The Act sets forth a series of rules for preserving the confidentiality of classified information, for allowing discrete use of classified information, and for reviewing district court orders disclosing such information. One rule permits the government to seek an interlocutory appeal of a district court order "authorizing the disclosure of classified information." *Id.* § 7(a). No one disputes that the information at issue is "classified." Only the meaning of "disclosure" is at stake. The Act does not define the term, but "disclose" conventionally means "to bring into view by uncovering, to expose, to make known, to reveal to knowledge, to free from secrecy or ignorance, or make known." Black's Law Dictionary 417 (5th ed. 1979); *see* Webster's Third New International Dictionary 645 (1981). An order that makes classified information known to someone without access to it counts as a disclosure.

*United States v. Smith* supports this interpretation. 899 F.2d 564 (6th Cir. 1990). At issue was a district court's order that permitted judicial staff and a law clerk to review classified information. The government challenged the disclosure in an interlocutory appeal. Because the district court's order "is said to have the effect of permitting the disclosure of classified information to putatively unauthorized persons," we reasoned, "appellate jurisdiction" existed "under § 7(a)." *Id.* at 566–67. It made no difference in the case that the disclosure was to a law clerk or judicial staff, as opposed to the public in general.

The same was true in *United States v. Clegg.* 740 F.2d 16, 18 (9th Cir. 1984). There, too, the court permitted interlocutory review of a disclosure order. In that case, as in this one, the order released classified information to the defendant's counsel, as opposed to the public in general. It is "clear," the Ninth Circuit reasoned, "that [the Act] is as concerned with controlling disclosures to the defendant as it is with controlling disclosures to the public." *Id.*

Asgari counters that the "common law [of] privilege" permits the sharing of this information with defense counsel. Mot. to Dismiss at 8. For that reason, he claims, the court's order would not lead to a cognizable "disclosure" and thus no jurisdiction exists for our review of the permissibility of the order under the Act. *Id.* Resort to common law background principles, however, comes into play when construing ambiguous terms. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989). This part of the Act speaks with admirable clarity. Before the court issued its order, defense counsel for Asgari did not have access to this classified information. That indeed was the point of the order. After the order, defense counsel would have had access to these national security secrets. All in all, that counts as an order authorizing the disclosure of classified information.

Confirming the point are the cases invoked by Asgari. Two of the cases do not mention the Act, and none of them purports to establish a universal meaning of disclosure. *Roviaro v. United States*, 353 U.S. 53, 60 (1957); *United States v. Sierra-Villegas*, 774 F.3d 1093, 1098–99 (6th Cir. 2014).

*United States v. Moussaoui* does not alter this conclusion. 333 F.3d 509 (4th Cir. 2003). In that case, it is true, the Fourth Circuit ruled that it lacked jurisdiction under § 7 to review the

appeal. But the case arose in a materially different setting. It did not involve an order to disclose classified information, as here; it involved an order permitting the defendant to depose an enemy combatant witness. *Id.* at 514–15. That's why the court ruled that the Act applied "only by analogy." *Id.* The Fourth Circuit's decision may or may not be right. *See United States v. Moussaoui*, 336 F.3d 279, 282–86 (4th Cir. 2003) (Wilkinson, J., dissenting from denial of rehearing en banc); *id.* at 286–93 (Luttig, J., dissenting from denial of rehearing en banc). For now, the key reality is that it did not involve a disclosure order like this one. Confirming the point is the en banc concurrence by the author of the panel decision, in which he makes clear that an order like Asgari's would be immediately reviewable. *Id.* at 280 ("[T]here is no question that CIPA § 7 authorizes the government to take an interlocutory appeal from an order of the district court that authorizes the disclosure of classified information to the defendant.") (citing *Clegg*, 740 F.2d at 18).

The government and Asgari also join debate about a distinct question: May we review a set of orders about this disclosure that the district court issued after the government appealed the July 8th order? The answer is no. But this answer turns not on the Act but on the reality that the government's notice of appeal was "an event of jurisdictional significance" over this issue. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). When the government appealed the district court's July 8th order, it deprived the district court of jurisdiction to do anything else on this disclosure point. *See Manrique v. United States*, 137 S. Ct. 1266, 1271 (2017).

As for the merits, the district court's order receives abuse-of-discretion review, *United States v. Amawi*, 695 F.3d 457, 470 (6th Cir. 2012), and a material mistake of law generally amounts to just that, *Koon v. United States*, 518 U.S. 81, 100 (1996).

When the government possesses classified information that it wishes to withhold from a defendant, it may do so upon a "sufficient showing" to the district court. 18 U.S.C. app.3 § 4. What counts as a "sufficient showing?" We have read § 4 to say that a court should balance the government's interests in keeping the information secret against the defendant's interest in information that is "relevant and helpful" to his defense. *Amawi*, 695 F.3d at 469–70. The court steps into "the shoes of defense counsel, the very ones that cannot see the classified record, and

act[s] with a view to their interests." *Id.* at 471. In doing so, the court keeps three factors in mind: whether (1) the information is "relevant"; (2) the government's privilege claim for secrecy is "colorable"; and (3) the information is "helpful" to the defense. *Id.* at 470.

The district court initially applied the correct standard. It reviewed the information "ex parte" just as the statute contemplates. 18 U.S.C. app.3 § 4. It determined the government had a colorable privilege claim. And it found the material not "relevant and helpful" to Asgari's defense. R.150 at 2. That looked like the end of the debate. The district court used the correct the legal standard, and it applied the standard in a reasonable way.

But at Asgari's urging, the district court reconsidered its decision in light of defense counsel's superior understanding of Asgari's defense strategy and counsel's purported security clearance. We have no problem with the first point—that defense counsel in general, and this counsel in particular, knows more about how to defend his client than the district court would. But the existence of a security clearance by itself does not change the equation or offer a legitimate basis for changing course, and above all it does not alter the directive of the Act that the district court make these decisions on an ex parte basis.

Section 4 is a procedural safeguard. If the government wants to keep discoverable information classified, it has to show that in concealing the information it has taken into account the defendant's ability to prepare his defense before trial. At the same time, the Act recognizes the government's interest in preserving the secrecy of national security confidences. That's why the statute vests the *district court*, a confidential arbiter, with responsibility to evaluate the information's relevance. Defense counsel's security clearance becomes relevant if and only if the court determines the material should be disclosed. Just because the defendant has a need to see the information doesn't mean the information gets declassified or given to one person for review. Security clearances simply are one way for the district court to make sure that the government's privilege is preserved to the maximum extent possible. *See* 18 U.S.C. app.3 § 3.

Nothing in § 4 suggests that defense counsel has a role to play when the district court assesses the relevance or helpfulness of the classified information. Just the opposite. The statute refers to the district court's assessment of these factors through an ex parte hearing ("a written

statement to be inspected by the court alone") that occurs without the defendant's knowledge ("If the court [grants relief] following such an ex parte showing, the entire text of the statement of the United States shall be sealed."). *Id.* § 4.

Asgari makes much of the fact that the district court expressed it had trouble, on reconsideration, deciding whether the information was relevant to Asgari's defense. We appreciate the point. But the text vests the district court alone with responsibility to make the decision. Section 4 certainly does not tell the district court to outsource its statutory responsibility to defense counsel any time it has trouble deciding whether information is relevant. It will be the rare defense counsel who doubts his superior position to gauge the needs of his clients. And it thus will be the rare case in which, if defense counsel's perspective counts, that the court could deny that input on the relevance and helpfulness questions.

Asgari adds that the government's privilege is not in jeopardy if the disclosure is made to a defense counsel like this one, who has a high security clearance and an extensive background using classified information. But this argument does not move the needle either. Section 4 expresses a clear view of what measures are necessary to protect against improper disclosure. Whether defense counsel has a security clearance or not, top secret or not, are considerations that do not explain why we can read defense counsel's involvement into the § 4 relevance inquiry.

The clear rule established by § 4 also makes sense. Even the most competent and ethical lawyers make mistakes. That risk goes up in view of defense counsel's obligation to represent his client ardently. *See* Ohio Rules of Prof'l Conduct 1.3. An ex parte approach to the relevance inquiry mitigates that risk.

We reverse and remand the case for further proceedings consistent with this opinion.