**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

ZACARIAS MOUSSAOUI,
            *Defendant-Appellee,*

ABC, INCORPORATED; ASSOCIATED
PRESS; CABLE NEWS NETWORK, LP,
LLLP; CBS BROADCASTING,
INCORPORATED; THE HEARST
CORPORATION; NATIONAL
BROADCASTING COMPANY,
INCORPORATED; THE NEW YORK TIMES
COMPANY; THE REPORTERS
COMMITTEE FOR FREEDOM OF THE
PRESS; THE STAR TRIBUNE COMPANY;
TRIBUNE COMPANY; THE WASHINGTON
POST,
            *Intervenors.*

No. 03-4162

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-01-455)

In Re: UNITED STATES OF AMERICA,
*Petitioner.*

v.

ABC, INCORPORATED; ASSOCIATED
PRESS; CABLE NEWS NETWORK, LP,
LLLP; CBS BROADCASTING,
INCORPORATED; THE HEARST
CORPORATION; NATIONAL
BROADCASTING COMPANY,
INCORPORATED; THE NEW YORK TIMES
COMPANY; THE REPORTERS
COMMITTEE FOR FREEDOM OF THE
PRESS; THE STAR TRIBUNE COMPANY;
TRIBUNE COMPANY; THE WASHINGTON
POST,

*Intervenors.*

No. 03-4261

On Petition for Writ of Mandamus.
(CR-01-455)

Argued: June 3, 2003

Decided: June 26, 2003

Before WILKINS, Chief Judge, and WILLIAMS and
GREGORY, Circuit Judges.

Dismissed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Williams and Judge Gregory joined.

**COUNSEL**

**ARGUED:** Michael Chertoff, Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-

ington, D.C., for Appellant. Frank Willard Dunham, Jr., Federal Public Defender, Alexandria, Virginia; Edward B. MacMahon, Jr., Middleburg, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Robert A. Spencer, Assistant United States Attorney, Kenneth M. Karas, Assistant United States Attorney, David J. Novak, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant. Gerald T. Zerkin, Senior Assistant Federal Public Defender, Kenneth P. Troccoli, Assistant Federal Public Defender, Anne M. Chapman, Assistant Federal Public Defender, Alexandria, Virginia; Alan Yamamoto, Alexandria, Virginia, for Appellee.

---

## OPINION

WILKINS, Chief Judge:

This appeal is one of extraordinary importance, presenting a direct conflict between a criminal defendant's right "to have compulsory process for obtaining witnesses in his favor," U.S. Const. amend VI, and the Government's essential duty to preserve the security of this nation and its citizens. The Government appeals an order of the district court directing it to produce an individual ("the enemy combatant witness")[1] for a deposition pursuant to Federal Rule of Criminal Procedure 15,[2] arguing that access to the enemy combatant witness will have devastating consequences for national security and foreign relations. Counsel for Appellee Zacarias Moussaoui,[3] on the other hand,

---

[1]The name of this individual is classified, as is much of the information involved in this appeal. Throughout this opinion we have avoided all references to classified material.

[2]Rule 15(a)(1) provides that the district court may order the deposition of a witness for the purpose of preserving the witness' testimony for trial "because of exceptional circumstances and in the interest of justice."

[3]As explained in more detail below, Moussaoui is representing himself in the district court. Because the right of self-representation does not extend to appeals, *see Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 163 (2000), standby counsel in the district court were appointed as counsel for this appeal.

maintain that it is fundamentally unfair for the Government to institute a criminal prosecution in the federal district court and then deny the defendant access to a potentially favorable witness.

We have accepted briefing on the issues and conducted argument, and we are prepared at this time to rule on the substantive questions before us. However, we are compelled to conclude that we are without authority to do so because the order of the district court is not yet an appealable one. We are therefore constrained to dismiss. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

I.

On September 11, 2001, members of al Qaeda[4] hijacked three passenger aircraft and flew them into the World Trade Center towers in New York City and the Pentagon in Virginia. A fourth plane, apparently headed for the Capitol Building in Washington, D.C., crashed in Pennsylvania after an heroic effort by passengers resisting the hijacking.

Moussaoui, an admitted al Qaeda member, was arrested approximately one month prior to September 11. He has been in pre-trial confinement since his arrest. A subsequently issued indictment alleges that until the time of his arrest, Moussaoui was a part of the planned attacks. He is charged with conspiracy to commit acts of terrorism transcending national boundaries, *see* 18 U.S.C.A. § 2332b(a)(2), (c) (West 2000) (Count One); conspiracy to commit aircraft piracy, *see* 49 U.S.C.A. § 46502(a)(1)(A), (a)(2)(B) (West 1997) (Count Two); conspiracy to destroy aircraft, *see* 18 U.S.C.A. §§ 32(a)(7), 34 (West 2000) (Count Three); conspiracy to use weapons of mass destruction, *see* 18 U.S.C.A. § 2332a (West 2000) (Count Four); conspiracy to murder United States employees, *see* 18 U.S.C.A. §§ 1114, 1117 (West 2000) (Count Five); and conspiracy to destroy property, *see* 18 U.S.C.A. § 844(f), (i) (West 2000) (Count Six). The Government is seeking the death penalty on Counts One through Four.

---

[4]"Al Qaeda" is transliterated from Arabic text. Several spellings may be acceptable for a single transliterated word; this opinion follows the spelling conventions used in the indictment.

In April 2002, Moussaoui moved to dismiss court-appointed counsel and proceed pro se. After lengthy proceedings in the district court concerning Moussaoui's competency to represent himself, the district court granted the motion. The court directed Moussaoui's former attorneys to remain involved as standby counsel.

In September 2002, Moussaoui moved for access to the enemy combatant witness, asserting that this individual would be an important part of his defense. Moussaoui's motion was supported by standby counsel, who filed a motion seeking pretrial access to the enemy combatant witness and a writ of habeas corpus *ad testificandum* ("testimonial writ") for this witness' trial testimony.[5] The Government opposed this request.

---

[5]Moussaoui also sought access to two other al Qaeda members accused of complicity in the September 11 attacks. Standby counsel supported these requests as well. In its order granting access to the enemy combatant witness, the district court denied access to these two individuals, concluding that Moussaoui and standby counsel had failed to establish that the individuals would provide material, admissible testimony.

During the course of the proceedings in the district court, Moussaoui moved for the production of a third individual. Noting that the request for production of this third individual involved the same legal questions as the request for production of the enemy combatant witness, the district court declined to rule on this motion.

In connection with the Government's appeal, Moussaoui has filed pro se supplemental briefs in which he asserts that the district court erred in refusing to rule on his motion for access to the third individual and asserting that access must be granted. Because the district court has not yet ruled on Moussaoui's request, however, it is not before us in this proceeding.

Even if we construed Moussaoui's pleadings as petitions for writs of mandamus, he would not be entitled to relief. Mandamus is an appropriate remedy when a district court arbitrarily refuses to rule on a motion. *See Pfizer, Inc. v. Kelly (In re Sch. Asbestos Litig.)*, 977 F.2d 764, 792-93 (3d Cir. 1992). The refusal to rule by the district court is not arbitrary, but rather is based on a reasonable judgment that this appeal may resolve a number of issues relevant to Moussaoui's request for access to the third individual.

Following a hearing, the district court granted the motion in part. Applying the procedures set forth in the Classified Information Procedures Act (CIPA), 18 U.S.C.A. App. 3 §§ 1-16 (West 2000 & Supp. 2003), as a useful framework for decision, the court determined that testimony from the enemy combatant witness would be relevant and material to Moussaoui's planned defense to the charges. The court also concluded that Moussaoui and the public's interest in a fair trial outweighed the Government's national security interest in precluding access to the enemy combatant witness. However, the court ruled that the Government's national security concerns counseled against granting unfettered pretrial access to the enemy combatant witness and against requiring that the enemy combatant witness be produced for testimony at trial. The district court therefore issued a testimonial writ directing that the Government produce the witness for a Rule 15 deposition and setting conditions for the deposition.

The Government appealed the order of the district court. We heard argument on June 3, 2003.

## II.

Appellate jurisdiction is generally governed by 28 U.S.C.A. § 1291 (West 1993), which provides that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." A "final" judgment is one "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (internal quotation marks omitted). "In the criminal context, finality comes with the conviction and imposition of sentence." *United States v. Bertoli*, 994 F.2d 1002, 1010 (3d Cir. 1993).

Judged by this standard, the order of the district court clearly is not a "final" one. Nevertheless, the Government maintains that we have jurisdiction, offering three grounds for such a conclusion: CIPA, the collateral order doctrine, and mandamus. None of these provides a basis for review of the district court order.

## A.  *CIPA*

CIPA was enacted in 1980 to combat the problem of "graymail," an attempt by a defendant to derail a criminal trial by threatening to disclose classified information. *See* S. Rep. No. 96-823, at 2 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4295; *see also id.* at 3 (noting that problem of graymail is not "limited to instances of unscrupulous or questionable conduct by defendants since wholly proper defense attempts to obtain or disclose classified information may present the government with the same 'disclose or dismiss' problem"), *reprinted in* 1980 U.S.C.C.A.N. at 4296-97. CIPA requires that a criminal defendant who plans to disclose classified information at his trial so notify the district court prior to trial. *See* 18 U.S.C.A. App. 3 § 5(a). The government may then request a hearing, at which the district court must determine whether the classified information in question is relevant and admissible. *See id.* § 6(a). Once the district court has made such a ruling, CIPA entitles the government to take an interlocutory appeal.[6] *See id.* § 7(a).

Here, the Government contends that the order of the district court directing the deposition of the enemy combatant witness is "a decision or order . . . authorizing the disclosure of classified information," *id.*, from which it may take an immediate appeal. We disagree. CIPA § 6, to which the Government points, is concerned with the disclosure of classified information by the defendant to the public at a trial or pretrial proceeding, not the pretrial disclosure of classified information to the defendant or his attorneys. *Cf. United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc); *id.* at 1108-09 (noting that the government's interest in maintaining confidentiality of classified information "is still protectable although [the defendant] may have had access to the information"). It is true, of course, that the district

---

[6]Another provision of CIPA, § 4, allows the district court to authorize the government to redact information from classified documents before providing such documents to the defendant during pretrial discovery. Even if CIPA authorizes an interlocutory appeal by the government from an order under § 4, that section does not apply here because the testimony of the enemy combatant witness is not a document from which the Government can redact information. In any event, the Government does not rely on § 4 as a basis for jurisdiction.

court issued the testimonial writ based in part on its assessment that the enemy combatant witness' testimony would likely be helpful to Moussaoui's defense. But, neither this conclusion, nor the fact that the purpose of the deposition is to preserve the enemy combatant witness' testimony for potential use at trial, is sufficient to establish the applicability of CIPA. At its core, the order of the district court concerned only the question of whether Moussaoui and standby counsel would be granted access to the enemy combatant witness (and if so, what form of access), not whether any particular statement of this witness would be admitted at trial. The district court was thus correct to conclude that CIPA applies here only by analogy. Because CIPA is not directly applicable, § 7 does not authorize an interlocutory appeal. *See Arizona v. Manypenny*, 451 U.S. 232, 246 (1981) (noting presumption against governmental appeals in criminal cases absent express statutory authorization).

## B.  *Collateral Order Doctrine*

The Supreme Court has long given the finality requirement of § 1291 a practical construction rather than a technical one. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To this end, the Court has identified "a narrow class" of collateral orders "that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (internal quotation marks & citation omitted); *see id.* at 867-68 ("Immediate appeals from such orders . . . do not go against the grain of § 1291, with its object of efficient administration of justice in the federal courts."). Such decisions are immediately appealable.

The collateral order doctrine provides that to be subject to immediate appeal, a ruling of the district court "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468. The Court has emphasized that the collateral order doctrine is to be applied strictly, lest it swallow the general requirement of finality. *See Digital Equip.*, 511 U.S. at 868. And, "[b]ecause of the compelling interest in prompt trials, the Court has interpreted the requirements of the collateral-order exception to the final judgment rule with the

utmost strictness in criminal cases." *Flanagan v. United States*, 465 U.S. 259, 265 (1984); *see Cobbledick v. United States*, 309 U.S. 323, 325 (1940) ("[E]ncouragement of delay is fatal to the vindication of the criminal law.").

The order of the district court fails to satisfy the first prong of the *Cohen* analysis. An order that is "tentative, informal or incomplete" is not final for purposes of the collateral order doctrine. *Cohen*, 337 U.S. at 546; *see Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (explaining that an order is "final" for purposes of the collateral order doctrine when it is "made with the expectation that [it] will be the final word on the subject addressed" (internal quotation marks omitted)). Here, the ruling of the district court is a non-final discovery order. *See United States v. Nixon*, 418 U.S. 683, 690-91 (1974); *Fed. Ins. Co. v. Me. Yankee Atomic Power Co.*, 311 F.3d 79, 81 (1st Cir. 2002).

The order of the district court will not become final unless and until the Government refuses to comply and the district court imposes a sanction.[7] *See Nixon*, 418 U.S. at 691. It is not enough that the Government's noncompliance with the order is anticipated or even certain, especially when it is unknown what sanction, if any, may be imposed by the district court. *Cf. United States v. Kane*, 646 F.2d 4, 8 (1st Cir. 1981) (concluding that discovery order was not appealable under 18 U.S.C.A. § 3731 (West Supp. 2003) [providing for appeal of district court order excluding evidence] when the government had not yet indicated whether it would disobey the order and, even if disobedience was certain, it was not clear that exclusion of evidence would be the sanction imposed by the district court). If the Government elects not to comply with the district court order, the resulting sanction may be one that the Government is willing to bear and not challenge on appeal. On the other hand, the Government may not be willing to bear the sanction and may appeal to this court seeking relief. In either

---

[7]The absence of a sanction for defiance of a discovery order may also be treated as a failure to satisfy the third prong of the *Cohen* analysis, which requires that the challenged order be effectively unreviewable after final judgment. *See MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 121-22 (4th Cir. 1994).

event, the order of the district court is not final until a sanction for noncompliance is imposed.

Here, despite indications that it will refuse to produce the enemy combatant witness under any circumstances, and despite ample opportunity to make its position known, the Government has not notified the district court of its refusal to comply with the testimonial writ. And, we cannot acquire jurisdiction through speculation about what action the Government may or may not take and what sanction the district court may or may not impose.

In reaching this conclusion, we are cognizant that this case involves substantial national security concerns. However, we cannot consider these legitimate concerns in our jurisdictional analysis because application of the collateral order doctrine "is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a 'particular injustic[e]' averted, *Van Cauwenberghe* v. *Biard*, 486 U.S. 517, 529 (1988), by a prompt appellate court decision." *Digital Equip.*, 511 U.S. at 868 (alteration in original). Ultimately, the order of the district court is a discovery order like any other, and must be treated the same for jurisdictional purposes.[8]

## C.  *Mandamus*

The Government filed a petition for a writ of mandamus as an alternate basis for jurisdiction. Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v.*

---

[8]The defiance-and-sanction requirement is not without exception. In *Nixon*, for example, the Supreme Court determined that it would be "inappropriate" and "unseemly" "[t]o require a President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling." *Nixon*, 418 U.S. at 691-92. However, this exception has been limited to its unique facts by numerous courts. *See, e.g.*, *Bennett v. City of Boston*, 54 F.3d 18, 20-21 (1st Cir. 1995) (per curiam) (rejecting claim that elected district attorney should be exempt from requirement; citing cases). And, we can discern no basis on which to forgo the requirement in this case.

*Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam). Mandamus "has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will v. United States*, 389 U.S. 90, 95 (1967) (internal quotation marks omitted). In short, "only exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." *Id.* (internal quotation marks omitted).

In order to preserve the extraordinary nature of the mandamus remedy, the Supreme Court has set forth two conditions that must be satisfied as a predicate to mandamus jurisdiction. First, "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires." *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 403 (1976); *see Will*, 389 U.S. at 97 (noting that "[m]andamus . . . may never be employed as a substitute for appeal in derogation of . . . clear policies" favoring delay of review until final judgment). Second, the petitioner bears "the burden of showing that [his] right to issuance of the writ is clear and indisputable." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953) (internal quotation marks omitted).

The Government has not established that it has a clear and indisputable right to reversal of the order of the district court. The substantive issues involved here are complex and difficult, and the answer is not easily discerned. We therefore deny mandamus relief.

### III.

For the reasons set forth above, we dismiss the appeal and the petition for a writ of mandamus. To avoid any unnecessary delay of this pending trial, we intend to expedite any subsequent appeal that may be taken. Because we are presently without jurisdiction, we lack authority to direct the district court to proceed expeditiously. However, we note that the parties and the district court have thus far pursued these matters with diligence, and we urge them to continue to do so.

THE MANDATE SHALL ISSUE FORTHWITH.

*DISMISSED*