**UNITED STATES of America**

v.

**Majed HAJBEH**

**No. CR. 03–357–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 25, 2003.

Jeanine Linehan, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Ashraf Wajih Nubani, Esquire, Busch & Nubani PC, Annandale, Danny Onorato, Esquire, Coburn & Schertler, Washington, DC, for Defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

Defendant in this immigration fraud prosecution seeks to take the deposition of his brother-in-law in the Republic of Jordan pursuant to Rule 15(a), Fed.R.Crim.P., on grounds that the brother-in-law would provide material, exculpatory testimony, but refuses to travel to the United States to testify.

For the reasons that follow, defendant's Rule 15(a) motion must be denied.

### I.

Defendant Majed Hajbeh, a citizen of the Republic of Jordan, is a lawful permanent resident of the United States currently residing in Woodbridge, Virginia. He emigrated to the United States from Jordan in January 1993. An indictment returned on August 5, 2003 charges defendant with unlawful possession of an alien registration card procured by fraud in violation of 18 U.S.C. § 1546(a).[1] Specifically, the government alleges that defendant submitted an Application for Immigrant

1. This section provides as follows:
   Whoever knowingly forges, counterfeits, al-

ters, or falsely makes any immigrant or

Visa and Alien Registration (Application), also known as Optional Form 230, to the United States Embassy in Amman, Jordan on September 3, 1992 that fraudulently indicated that he was single, had never been married, and had no children.[2]

In support of its contention that defendant's immigrant visa was procured by fraud, the government relies on the following documents seized by FBI special agents during a consent search of defendant's residence in Woodbridge, Virginia:

(1) A Kuwaiti marriage certificate indicating that defendant was married to Najwa Abu Al Hija in Kuwait on June 15, 1988.

(2) A Jordanian birth certificate reflecting that defendant and his wife are the parents of Samiya Hajbeh born November 7, 1990 in Kuwait.

(3) A divorce declaration deed, written on June 8, 1993 in Jordan and attested to by a religious judge, indicating that defendant divorced Abu Al Hija on May 22, 1992.[3]

(4) A Jordanian divorce certificate, registered on August 13, 1998, indicating that defendant divorced Abu Al Hija on June 8, 1993.

(5) A Jordanian marriage certificate, registered on August 13, 1998, indicating that defendant and Abu Al Hija remarried on June 12, 1993.

The government claims these documents reflect that defendant was married and had a child at the time he completed and submitted the Application in September 1992, and thus show that defendant included false information on his Application.

Based on the false representations in defendant's Application, the United States Embassy issued defendant an immigrant visa on September 16, 1992, permitting him to enter the United States and to reside here as a lawful permanent resident. The government further alleges that defendant has resided in the United States since January 9, 1993 in possession of a fraudulently obtained immigrant visa.

■ For his part, defendant alleges he did not violate 18 U.S.C. § 1546(a) because he did not knowingly subscribe to any false statements in his Application.[4] According

---

nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation *for entry into or as evidence of authorized stay or employment in the United States,* knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained... shall be fined under this title...or imprisoned....

18 U.S.C. § 1546(a).

2. Question nine (9) on the Application asked defendant to mark a box to indicate his mari-

tal status. The box marked stated defendant was "single (never married)." And "Not Applicable" was the response to question thirteen (13) which asked defendant to list the names, addresses, dates and places of birth of his children.

3. The divorce declaration deed is an attestation by a religious judge that defendant divorced his wife and a request for issuance of a divorce certificate to inform defendant's wife of the divorce. This process is called a "restituted divorce."

4. Proof of defendant's knowledge of the false statements is an element of the charged offense under 18 U.S.C. § 1546(a). *See e.g. United States v. Prince–Oyibo,* 320 F.3d 494, 496 (4th Cir.2003) (stating that the sole issue for the jury was whether the defendant "knew" he possessed and used a counterfeit, altered, or falsely made visa).

to his counsel's proffer,[5] defendant received assistance in translating and completing the Application from his brother-in-law, Hasan S. Hajibi. Defendant claims he needed this assistance owing to his lack of proficiency in English.[6] He further claims that Mr. Hajibi filled out the Application on his behalf by relying chiefly on an immigration form defendant's mother submitted in 1986, which indicated that defendant was unmarried and childless. Defendant's position, then, is that he did not sign or submit the Application knowing it contained false information, but rather that Mr. Hajibi filled out the Application for defendant and included the false information concerning defendant's marital and parental status based on an outdated 1986 immigration form.

Defendant now moves pursuant to Rule 15(a), Fed.R.Crim.P., to depose Mr. Hajibi in Jordan on grounds that Mr. Hajibi resides in Jordan, refuses to travel to the United States to testify,[7] and can provide material and exculpatory testimony.

## II.

■ Although depositions "are disfavored in criminal cases," [8] Rule 15(a), Fed. R.Crim.P., provides that courts may order such depositions in "exceptional circumstances and in the interest of justice" [9] to "preserve testimony for trial." [10] While the Rule neither defines nor elucidates the "exceptional circumstances" and "interest of justice" standards, some guidance in this regard is found in the Advisory Committee's note, which states that a court may permit a party to depose a witness in a criminal case if (a) the witness will be unavailable to testify at trial, (b) the testimony is material to the moving party's case, and (c) the testimony is necessary to avoid an injustice.[11] This guidance, while helpful, is not sufficiently particularized to be dispositive of specific cases. For example, the guidance leaves unanswered

5. All facts on which defendant relies derive from his counsel's proffer. Defendant did not file an affidavit of the witness he seeks to depose.

6. The government contends that defendant is proficient in English. In support, the government cites defendant's answer to question thirty (30) on his Application in which he indicated that he could speak, read, and write English.

7. Defense counsel concedes that Mr. Hajibi has made no efforts to apply for a passport or visa to obtain permission to travel to the United States; he simply refuses for undisclosed reasons to come to this country.

8. *United States v. Drogoul,* 1 F.3d 1546, 1551 (11th Cir.1993); *see also United States v. Marcos,* No. 87 Cr. 598(JFK), 1990 WL 58825, at *2 (S.D.N.Y. May 1, 1990) ("Given the disfavor in which depositions are regarded in criminal cases....").

9. Rule 15(a), Fed.R.Crim.P. ("A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice.").

10. Rule 15(a), Fed.R.Crim.P.; *see also* Rule 15(a), Fed.R.Crim.P. advisory committee's note ("The principal objective is the preservation of evidence for use at trial. It is not to provide a method of pretrial discovery...."); *United States v. Kelley,* 36 F.3d 1118, 1125 (D.C.Cir.1994) (denying the motion for a Rule 15(a) deposition because the movant's objective was not to preserve testimony for trial); *Drogoul,* 1 F.3d at 1551; *United States v. Steele,* 685 F.2d 793, 809 (3d Cir.1982); *United States v. Rich,* 580 F.2d 929, 933–34 (9th Cir.1978) ("In criminal cases, therefore, unlike civil cases, depositions are not allowed merely for the purpose of discovery.").

11. Rule 15(a), Fed.R.Crim.P. advisory committee's note; *see also United States v. Johnson,* 752 F.2d 206, 209 (6th Cir.1985) (relying on the advisory committee's note in determining whether exceptional circumstances exist).

whether exculpatory evidence that is cumulative or merely corroborative of other trial evidence is sufficient to trigger the operation of the Rule. Also unanswered is the question of what circumstances constitute a qualifying unavailability of a witness.

Nor are these questions definitively answered in the caselaw. Authority on the application of Rule 15(a) and the "exceptional circumstances" standard is sparse.[12] Authority from elsewhere is generally consistent with the guidance in the Advisory Committee's note, but varies somewhat in detail.[13] Courts typically require a party seeking a deposition to establish both that

the witness's testimony is material and that the witness will likely be unavailable to testify at trial.[14] The Second and Tenth Circuits also require the moving party to show that denying the requested deposition will result in a failure of justice, but then provide little explanation as to what a movant must show to establish this element of the test. *See United States v. Cohen*, 260 F.3d 68, 78 (2d Cir.2001); *United States v. Fuentes–Galindo*, 929 F.2d 1507, 1509 (10th Cir.1991). The Eleventh Circuit weighs the moving party's showing of materiality and unavailability against countervailing considerations, including the likelihood that the testimony will be admissible at trial and whether a deposition would cause excessive delay.[15]

**12.** In *United States v. Moussaoui*, 333 F.3d 509 (4th Cir.2003), the Fourth Circuit heard argument in an appeal from the lower court's grant of defendant's motion for a Rule 15(a) deposition, but dismissed the appeal as premature and thus never reached the Rule 15(a) question. *Id.* at 517.

**13.** *Compare United States v. Cohen*, 260 F.3d 68, 78 (2d Cir.2001) ("A movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice.") *with United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir.1993) (weighing materiality and unavailability against countervailing considerations).

**14.** *See, e.g., Cohen*, 260 F.3d at 77; *United States v. Thomas*, 62 F.3d 1332, 1340–41 (11th Cir.1995); *Drogoul*, 1 F.3d at 1552; *United States v. Ismaili*, 828 F.2d 153, 158 (3d Cir.1987); *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir.1984) *United States v. Korogodsky*, 4 F.Supp.2d 262, 265 (S.D.N.Y.1998); *United States v. Marcos*, No. 87 Cr. 598(JFK), 1990 WL 58825, at *2 (S.D.N.Y. May 1, 1990); *United States v. Bronston*, 321 F.Supp. 1269, 1271 (S.D.N.Y.1971). The burden of proof of showing materiality and unavailability rests on the party seeking the deposition. *See, e.g., United States v. Kelley*, 36 F.3d 1118, 1124 (D.C.Cir.1994) ("[T]he party seeking the deposition bears the burden of demonstrating that 'exceptional circumstances' necessitate the

preservation of testimony through deposition."); *Ismaili*, 828 F.2d at 159.

**15.** *See Thomas*, 62 F.3d at 1341 ("The third factor in the exceptional circumstances analysis is whether countervailing considerations in favor of the government would render the deposition unjust."); *Drogoul*, 1 F.3d at 1555 ("The court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial."). Although only the Eleventh Circuit specifically addresses the need to assess countervailing considerations, several other courts have informally taken into account other considerations in their Rule 15(a) analyses. *See, e.g., United States v. Aggarwal*, 17 F.3d 737, 742 (5th Cir.1994) (denying defendant's Rule 15(a) motion because of the untimeliness of defendant's request); *United States v. Mann*, 590 F.2d 361, 366 (1st Cir. 1978) (considering the admissibility of the testimony in determining whether a Rule 15(a) deposition is appropriate); *United States v. Bello*, 532 F.2d 422, 423 (5th Cir.1976) (citing the overwhelming evidence of guilt offered by the prosecution as a reason for declining to allow a Rule 15(a) deposition). The Third Circuit has suggested that it may be appropriate to apply a lowered materiality threshold for depositions of witnesses who are foreign nationals. *See Ismaili*, 82 F.2d at 161; *United States v. Steele*, 685 F.2d 793, 808 (3rd Cir.1982);; *United States v. Marcos*, No. 87 Cr. 598(JFK), 1980 WL 58825, at *2 (S.D.N.Y. May 1, 1990). This suggestion,

This balancing test is designed to ensure that courts permit Rule 15(a) depositions only in rare instances, a result the language of the Rule clearly intended.[16]

Whatever test is adopted, analysis properly begins with the question whether the proffered testimony is material.[17] Absent materiality, Rule 15(a) cannot apply. Because neither the Rule nor the Advisory Committee's note defines materiality, courts have assessed this prong of the "exceptional circumstances" test in a variety of ways, asking, for example, whether the testimony is essential or critical to the defense,[18] exculpatory[19] or capable of negating an element of the government's case,[20] or is instead cumulative or merely corroborative.[21]

Although no Fourth Circuit authority defines materiality in the Rule 15(a) context, materiality is well-defined in the case-law applying *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady,* a prosecutor's failure to disclose material exculpatory evidence to a defendant violates that defendant's right to due process.[22] Thus, to establish a *Brady* violation, a defendant must prove that the evidence is material by showing " a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Walker v. True,* 67 Fed.Appx. 758, 769, 2003 WL 21008657, *9 (4th Cir.2003) (citing *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)); *Love v. Freeman,* 188 F.3d 502, 1999 WL 671939, at *4 (4th Cir.1999) (citing *Kyles,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Thus, defendant can establish materiality—that the concealed evidence, if disclosed, would have likely impacted the result of the proceeding—by showing that the evidence is: (1) exculpatory[23] and (2)

however, has not found firm support in any circuit.

**16.** *See* Rule 15(a), Fed.R.Crim.P. ("The court may grant the motion because of *exceptional circumstances....* ") (emphasis added); *see also United States v. Dillman,* 15 F.3d 384, 389 (5th Cir.1994) ("The words 'exceptional circumstances' bespeak that only in extraordinary cases will depositions be compelled.").

**17.** *See Drogoul,* 1 F.3d at 1552 ("The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case.").

**18.** *See Aggarwal,* 17 F.3d at 742; *Drogoul,* 1 F.3d at 1554.

**19.** *See Kelley,* 36 F.3d at 1125 ("Moreover, there is typically some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant."); *United States v. Hagedorn,* 253 F.Supp. 969, 971 (S.D.N.Y. 1966) ("[Materiality] requires a reasoned basis for expecting that the testimony may exonerate him.").

**20.** *See Ismaili,* 828 F.2d at 162; *Bello,* 532 F.2d at 423 ("In the case before us, the evidence of guilt is so overwhelming that we find it improbable if not impossible to conclude that the testimony of the South American business associates would have had any significant impact on the jury verdict.").

**21.** *See United States v. Gragg,* 145 F.3d 1334, 1998 WL 246019, at *5 (6th Cir.1998) (finding that the deponent's testimony is not material because it is cumulative); *Thomas,* 62 F.3d at 1340; *Kelley,* 36 F.3d at 1125 (denying the requested deposition because "[a]t best, the affidavit corroborates Kelley's testimony that his original intention in opening the account was to hide money from his wife.").

**22.** *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**23.** *See United States v. Leigh,* 61 Fed.Appx. 854, 856, 2003 WL 1711227, at 2 (4th Cir. 2003); *Walker,* 67 Fed.Appx. at 769, 2003 WL 21008657, at *9 (4th Cir.2003); *Bramblett v. True,* 59 Fed.Appx. 1, 13, 2003 WL 58283, at *9 (4th Cir.2003) ("[The evidence] pertain[s] to incriminating statements made to Turner by Bramblett, and are thus not exculpatory— much less materially so—in and of themselves.").

not merely corroborative or cumulative of other evidence.[24] This two-pronged *Brady* materiality standard should also apply under Rule 15(a) given that both *Brady* and Rule 15(a) are aimed at ensuring that an accused receives, not a perfect trial, but a fundamentally fair one.

■ These principles, applied to the case at bar, point persuasively to the conclusion that the proffered testimony is not material. The analysis in this regard proceeds on the assumption that Mr. Hajibi, if present at trial, would testify in accordance with defense counsel's proffer,[25] namely that he, Mr. Hajibi, filled out the Application for defendant because defendant did not speak English and that he, Mr. Hajibi, not defendant, supplied the false answers on the Application. Such testimony is plainly exculpatory for defendant as it serves to negate the requisite knowledge element of the offense. But it is also, at best, cumulative and merely corroborative of testimony that defendant himself is able to offer and hence not material. Thus, defendant can himself testify that because he spoke no English or inadequate English, he asked Mr. Hajibi to fill out the Application for him and that it was Mr. Hajibi, not defendant, who filled out the Application and that it was Mr. Hajibi, not defendant, who supplied the false answers on the Application. Defendant can also add that he did not know that Mr. Hajibi had provided false answers in response to questions in the Application. At best, therefore, even assuming the accuracy and validity of defense counsel's proffer of Mr. Hajibi's testimony, that testimony is merely cumulative and corroborative and therefore, not material.[26]

Defendant seeks to avoid this result by arguing that although Mr. Hajibi's testimony is cumulative or corroborative of evidence the defendant himself can offer, he should nonetheless be allowed to depose Mr. Hajibi under Rule 15(a) because otherwise defendant will be compelled to testify in violation of his Fifth Amendment privilege against self-incrimination.[27] While

---

**24.** See *Love v. Freeman*, 188 F.3d 502, 1999 WL 671939, at *4 (4th Cir.1999) (concluding that the evidence is not material because it is merely cumulative of other evidence presented at trial); *United States v. Ellis*, 121 F.3d 908, 916 (4th Cir.1997) (denying defendant's *Brady* claim because a witness testified to evidence allegedly contained in the undisclosed material). While courts typically require a showing of both elements, most analyze the exculpatory nature of the evidence separately from their assessment of materiality. See, e.g., *Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir.2003) (citing *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

**25.** It must also be noted that the absence of any affidavit or witness declaration makes it difficult to assess the materiality of Mr. Hajibi's testimony. Without such an affidavit or declaration, it is difficult to determine whether Mr. Hajibi will actually testify as advertised and difficult to know the nature and details of his testimony. Nor is this an inconsequential point in this context; it weakens defendant's position on the motion given that defendant bears the burden of proof to show the "exceptional circumstances" and "interest of justice" required by Rule 15(a). See *Kelley*, 36 F.3d at 1124 (placing the burden of showing "exceptional circumstances" on the party requesting the deposition). Also worth noting is that neither counsel has offered any evidence or information on whether Jordanian laws or regulations would allow or prohibit a deposition. The analysis here proceeds on the assumption that there are no Jordanian legal obstacles to taking the deposition.

**26.** See *supra* note 24; see also *Gragg*, 145 F.3d 1334, 1998 WL 246019, at *2 (6th Cir.1998) (finding that the deponent's testimony is not material because it was cumulative); *Thomas*, 62 F.3d at 1340 (same); *Kelley*, 36 F.3d at 1125 (same). For the same reason that judges may deny a defendant's request to depose a witness, they may exclude cumulative evidence pursuant to Rule 403, Fed.R.Evid.

**27.** U.S. Const. Amend. V ("No person shall be... compelled in any criminal case to be a witness against himself....").

the denial of defendant's Rule 15(a) motion may certainly serve to encourage defendant to testify, he remains free to choose not to do so. Therefore, he is not, in any relevant sense, "compelled" to testify because his "free will [is not] overborne."[28] Put differently, an incentive to testify does not amount to compulsion. In the circumstances, defendant remains entirely free to testify or not as he sees fit.

The absence of materiality ends the analysis as it precludes the application of Rule 15(a). It is therefore unnecessary to consider whether, in the circumstances at bar, defendant has established Mr. Hajibi's unavailability under Rule 15(a).[29]

Accordingly, for the reasons stated, the absence of materiality precludes the operation of Rule 15(a) and defendant's motion to depose Mr. Hajibi in the Republic of Jordan must be denied.

An appropriate order has issued.

**28.** *United States v. Washington,* 431 U.S. 181, 187, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977) (holding that a witness is not "compelled" to testify unless "the free will of the witness [is] overborne."); *see also United States v. Rylander,* 460 U.S. 752, 758, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (holding that the defendant was not compelled to testify merely because he risked being held in civil contempt if he did not testify); *United States v. Butler,* 211 F.3d 826, 832–33 (4th Cir.2000) (defining "compulsion" extraordinarily narrowly when it held that a defendant was not "compelled" to testify when he risked incarceration on a civil contempt charge if he remained silent); *United States v. Arrington,* 73 F.3d 144, 149–50 (7th Cir.1996) (finding that denying the acceptance of responsibility reduction to a defendant who fails to offer testimony indicating acceptance does not burden the defendant's Fifth Amendment right); *United States v. Shively,* 715 F.2d 260, 268 (7th Cir.1983) ("Circumstances—a cogent prosecution witness, or a codefendant who is trying to exculpate himself at the defendant's expense—often force a defendant to take the stand in his own defense; yet there is no infringement of the Fifth Amendment."); *United States v. Zemke,* 457 F.2d 110, 115 (7th Cir.1972) (holding that the prosecution's presentation of strong evidence of guilt does not "compel" the defendant to testify in violation of the Fifth Amendment).

**29.** Were it necessary to reach this issue, the defendant would have to show a "substantial likelihood that the proposed deponent will not testify at trial." *Drogoul,* 1 F.3d at 1553; *United States v. Daniels,* 194 F.R.D. 700, 702 (D.Kan. 2000). It would be tempting to conclude that a foreign witness should not be deemed "unavailable," where, as here, there is no showing that the witness is incapable or precluded in any way from traveling to the United States, but simply refuses to do so. Yet, no cases so hold and reasonably so given that a defendant should not be penalized simply because a witness who possesses material, exculpatory evidence refuses to travel to the forum. Of course, a different conclusion might obtain if there were a showing, as there is not in this case, that the defendant played any role in securing the witness's unavailability. Nor is it proper to conclude that the witness is not "unavailable" simply because Mr. Hajibi is defendant's brother-in-law. The mere fact of this familial tie, without more, does not warrant the inference that defendant is responsible for the witness's unavailability or that defendant could compel the witness's presence.