UNITED STATES of America,

v.

Zacarias MOUSSAOUI, a/k/a "Shaqil" a/k/a "Abu Khalid al Sahrawi," Defendant.

No. CRIM. 01–455–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 2, 2003.

Robert A. Spencer, United States Attorney's Office, Alexandria, VA, for U.S.

Edward B. MacMahon, Middleburg, VA, Alan H. Yamamoto, Alexandria, VA, Gerald Thomas Zerkin, Frank W. Dunham, Jr., Office of the Public Defender, Richmond, VA, for Defendant.

Zacarias Moussaoui, Alexandria, VA, Pro se.

## MEMORANDUM OPINION

BRINKEMA District Judge.

### I. *Introduction*

Pursuant to Section 6(e) of the Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. 3, the United States has advised the Court that it cannot, consistent with national security considerations, comply with the Court's Orders of January 31 and August 29, 2003.[1] The Court must accept this representation as the product of the reasoned judgment of the Executive Branch. Therefore, the depositions ordered by the Court on January 31 and

---

**1.** Specifically, the United States claims that any Fed.R.Crim.P. 15 deposition of the detainees, who are presumably in Government custody, will necessarily result in the unauthorized disclosure of classified information because anything the detainees have said, or will say, is classified. Because the United States first articulated this rationale in the context of the Court's consideration of the Government's proposed substitution for the deposition testimony of another detainee, *see*

August 29, 2003 will not occur. 18 U.S.C.App. 3 § 6(e)(1); *see also United States v. Fernandez,* 913 F.2d 148, 154 (4th Cir.1990) (affirming the district court's rejection of proposed substitutions and dismissal of the indictment after the defendant was prohibited from disclosing classified information the court found to be relevant and admissible).

The Court has previously found that the defendant's fundamental right to a fair trial includes the right to compel the trial testimony of witnesses, presumably in Government custody, who may be able to provide favorable testimony on his behalf.[2] Moreover, we have also concluded that, consistent with well-established principles of due process, the United States may not maintain this capital prosecution while simultaneously refusing to produce witnesses who could, at minimum, help the defendant avoid a sentence of death.[3] *See* U.S. Const. Amend. VI; *Jencks v. United States,* 353 U.S. 657, 671, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957) (finding it to be inconsistent with the Government's paramount obligation to ensure that "justice is done" to "undertake prosecution and then invoke its . . . privileges to deprive the accused of anything which might be material to his defense"); *Roviaro v. United States,* 353 U.S. 53, 64–65, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (finding that the trial court committed prejudicial error when it permitted the Government to withhold from the defense the identity of a confidential informant, who played a prominent role in the charged criminal activity and could have offered trial testimony that would have been relevant and helpful to the defense). In light of these findings, and the Government's refusal to comply with the Court's Orders of January 31 and August 29, 2003, the Court must now determine what sanction is appropriate. *See* 18 U.S.C.App. § 6(e)(2); *see also United States v. Hastings,* 126 F.3d 310, 317 (4th Cir.1997) (finding that it is proper for a district court to sanction the Government for failing to comply with a discovery order).[4]

Both the defendant and standby defense counsel argue that total dismissal of this prosecution is the appropriate sanction.[5] Believing it to be "the surest route for ensuring that the questions at issue here can promptly be presented to the Fourth Circuit," the United States does not contest that dismissal of the Indictment is the appropriate sanction under Section 6(e)(2) of CIPA.[6] We do not agree.

## II. *Discussion*

█ Although dismissal is the presumptive sanction contemplated by CIPA when

---

Government's May 5, 2003 Reply to Standby Counsel's Response to Government's Proposed Substitutions at 8 fn. 3, 22, the Court resolved the initial defense motions concerning access using CIPA for guidance, finding that the statute provided a useful framework within which to resolve the tension between the United States' national security considerations and the defendant's right to mount an effective defense.

**2.** *See* Memorandum Opinion of March 10, 2003 at 12.

**3.** *See id.* at 16.

**4.** The United States Court of Appeals for the Fourth Circuit has characterized this Court's Order of January 31, 2003 as a non-final

discovery order. *United States v. Moussaoui,* 336 F.3d 279, 280 (4th Cir.2003) (denying United States petition for rehearing and rehearing en banc); *United States v. Moussaoui,* 333 F.3d 509, 515 (4th Cir.2003) (dismissing United States appeal of district court's January 31, 2003 ruling).

**5.** *See pro se* pleadings docketed as #s 967, 983, 988, 1008, 1054, 1069 and 1072; Standby Counsel's September 20, 2003 Motion for Sanctions and Other Relief.

**6.** *See* Government's September 24, 2003 Position Regarding Sanction at 2.

a defendant is prevented from disclosing classified information found to be material and favorable,[7] 18 U.S.C.App. 3 § 6(e)(2), in the interest of justice, a district court may exercise its discretion to fashion and impose less draconian sanctions. *See* 18 U.S.C.App. 36(e)(2); *Fernandez,* 913 F.2d at 163; *see also Roviaro,* 353 U.S. at 65, 77 S.Ct. 623 (noting that the Government's refusal to provide the defense with the name and address of an informant who could have offered trial testimony that would have been helpful to the defense should have been punished by dismissal of the relevant count in the indictment); *Hastings,* 126 F.3d at 317 (finding that dismissal of the indictment was too severe a sanction for the Government's failure to comply with the district court's discovery order regarding the defendant's selective prosecution claim); *United States v. Muse,* 83 F.3d 672, 675 (4th Cir.1996); *cf. Jencks,* 353 U.S. at 671–72, 77 S.Ct. 1007 (finding that a criminal case must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce to the defense information the trial court has found to be relevant).

The unprecedented investment of both human and material resources in this case mandates the careful consideration of some sanction other than dismissal. The defendant has been in federal custody since August 16, 2001, and has been under indictment in this court for nearly two years. Finding that this case can be resolved in an open and public forum, the Court concludes that the interests of justice would not be well served by dismissal.

In the Second Superseding Indictment ("Indictment"), Moussaoui is charged with Conspiracy to Commit Acts of Terrorism Transcending National Boundaries in violation of 18 U.S.C. § 2332b(a)(2) and (c) (Count I), Conspiracy to Commit Aircraft Piracy in violation of 18 U.S.C. § 46502(a)(1)(A) and (a)(2)(B) (Count II), Conspiracy to Destroy Aircraft in violation of 18 U.S.C. §§ 32(a)(7) and 34 (Count III), Conspiracy to Use Weapons of Mass Destruction in violation of 18 U.S.C. § 2332a(a) (Count IV), Conspiracy to Murder United States Employees in violation of 18 U.S.C. §§ 1114 and 1117 (Count V), and Conspiracy to Destroy Property in violation of 18 U.S.C. § 844(f), (i) and (n) (Count VI). The first four counts expose the defendant to a possible sentence of death because the United States has alleged that the charged conspiracies resulted in thousands of deaths on September 11, 2001.[8] (Indictment, Count I, The Charge at ¶ 16, Count II at ¶ 2, Count III at ¶ 2, Count IV at ¶ 2; Notice of Special Findings; Notice of Intent to Seek a Sentence of Death).

Approximately seventy-five percent of the Indictment concerns the activities of the nineteen alleged hijackers on and before September 11, 2001. Nevertheless, the United States maintains that the charged conspiracies are not conspiracies to carry out the September 11 attacks.[9]

---

**7.** Although Section 6(a) of CIPA expressly requires a court to make "all determinations concerning the use, relevance, or admissibility of classified information," because the dispute between the parties concerns prospective deposition testimony, it was neither practical nor possible to make rulings regarding the admissibility of testimony that has not been obtained. *See* Memorandum Opinion of August 29, 2003 at 13 fn. 20.

**8.** The deaths on September 11, 2001 are the only deaths alleged in the Indictment.

**9.** *See* Government's July 29, 2003 Opposition to Defendant's Motions for Access at 7–8. Rather, according to the Government, the attacks of September 11 were overt acts committed by the defendant's co-conspirators in furtherance of the charged conspiracies. *See id.* at 8.

Instead, the United States has, at times,[10] broadly characterized the underlying unlawful agreement as "al Qaeda's conspiracy to attack the United States,"[11] al Qaeda's "war on the United States" in which its members would "use virtually any means available to murder Americans en masse,"[12] and "a coordinated plan of attack upon the United States that included flying planes into American buildings."[13]

■■■ Although the precise nature and scope of the charged conspiracies ultimately are questions for the jury to resolve,[14] see *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir.1988), the United States correctly contends that it need not prove the defendant's participation in the September 11 attacks to obtain a conviction in this case.[15] Rather, to establish a defendant's guilt for a crime of conspiracy,[16] the Government must prove beyond a reasonable doubt, (1) the existence of an agreement between two or more persons to engage in the charged unlawful conduct, and (2) that the defendant knowingly and voluntarily became a member of the conspiracy.[17] *See*

**10.** At other times, the Government has described the charged unlawful conduct more specifically as "the conspiracy to commit the attacks perpetrated on September 11," (Government's May 10, 2002 Opposition to Defendant's Motion to Strike Government's Notice of Intent to Seek a Sentence of Death at 7), "conspiracy by al Qaeda... to hijack[ ] commercial airliners after gaining control by stabbing and killing passengers with knives smuggled aboard," (*id.* at 21), an "operation... in which civilian commercial airliners would be hijacked and flown into prominent buildings, including government buildings, in the U.S.," (Government's July 23, 2002 proposed Statement of Facts), a "plan to fly airplanes into prominent buildings in the United States," (*id.*), and a "plot to take over and damage aircraft that would carry United States citizens, or would be used to damage United States property," (United States July 25, 2002 Response to Standby Counsel's Memorandum Regarding Rule 11 Considerations at 15).

**11.** Government's July 23, 2003 proposed Statement of Facts. Before Moussaoui's failed attempt to enter a guilty plea to Counts I–IV on July 25, 2002, the United States tendered to the defendant a proposed Statement of Facts to which he would have had to admit in order for the United States to agree to accept his plea. The defendant's attempt to enter a guilty plea to Counts I–IV was aborted because the defendant was unwilling to admit to knowledge of, or involvement in, the September 11 attacks. Tr. July 25, 2002 hearing at 37–49.

**12.** Government's September 6, 2002 Response to Defendant's Motion to Strike Surplusage at 3; Government's July 29, 2003

Opposition to Defendant's Motions for Access at 8.

**13.** Government's July 29, 2003 Opposition to Defendant's Motion for Access at 18.

**14.** The burden is on the Government to prove both the existence of the conspiracies charged in the Indictment and the defendant's membership in them. *See Kotteakos v. United States*, 328 U.S. 750, 772, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Johnson*, 54 F.3d 1150, 1154 (4th Cir.1995); *Leavis*, 853 F.2d 215, 218 (4th Cir.1988). After the presentation of the evidence at trial, the Court may exercise its discretion to instruct the jury as to the distinction between a single conspiracy and multiple conspiracies. *See United States v. Bowens*, 224 F.3d 302, 307 (4th Cir. 2000); *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir.1994).

**15.** *See* United States' July 25, 2002 Response to Standby Counsel's Memorandum Regarding Rule 11 Considerations at 15–16.

**16.** A conspiracy is defined as an agreement entered into by two or more persons to engage in an unlawful act or engage in lawful behavior by unlawful means. *See United States v. Burgos*, 94 F.3d 849, 860 (4th Cir. 1996) (*citing* LaFave & Scott, Crim. Law Ch. 6 § 6.4, at 525 (2d ed.1986)).

**17.** With respect to Count V, which charges the defendant with Conspiracy to Murder United States Employees in violation of 18 U.S.C. §§ 1114 and 1117, the United States must also prove that "one or more of the co-conspirators" committed an overt act "to effect the object of the conspiracy."

*United States v. Strickland*, 245 F.3d 368, 385 (4th Cir.2001). "Once it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." *United States v. Burgos*, 94 F.3d 849, 861 (4th Cir.1996) (*quoting United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir.1992)). "One may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities." *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir.1993). Even if a defendant played only a minor role in a charged conspiracy, he may be convicted so long as he willfully joined "with an understanding of the unlawful nature" or "essential objectives" thereof. *United States v. Stewart*, 256 F.3d 231, 250 (4th Cir.2001); *Burgos*, 94 F.3d at 858 (*quoting United States v. Roberts*, 881 F.2d 95, 101 (4th Cir.1989)).

The Government's burden, however, as to the defendant's death eligibility is more of a challenge. The prosecution must first prove beyond a reasonable doubt, and the jury must find, that the defendant, himself, "intentionally participated in an act," 18 U.S.C. § 3591(a)(2)(C), or "intentionally and specifically engaged in an act of violence," 18 U.S.C. § 3591(a)(2)(D), that directly resulted in death. In opposing the Defendant's Motion to Strike the Notice of Intent to Seek a Sentence of Death, the Government recognizes that the defen-

dant's conduct must have been a substantial factor in the deaths of the victims. The Government, therefore, has supported exposing the defendant to the death penalty by arguing that the conspiracies, themselves, are the "acts" in which the defendant "participated" or "engaged" rendering him death eligible.[18]

To withstand constitutional scrutiny, any sentence of death in this case must be predicated on what the defendant, himself, actually did, not on what he may have wanted to do or on what his alleged co-conspirators were able to accomplish on their own. *See Tison v. Arizona*, 481 U.S. 137, 149, 156–57, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (holding that major participation in a felony, combined with reckless indifference to human life, is sufficient to satisfy the culpability requirement for a sentence of death "when that conduct causes its natural... lethal result");[19] *Enmund v. Florida*, 458 U.S. 782, 798, 801, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) ("the focus must be on [the defendant's] culpability, not on that of those who... [killed] the victims"); *Lockett v. Ohio*, 438 U.S. 586, 604–05, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (finding that the Constitution requires an individualized consideration regarding whether a sentence of death should be imposed). To conclude that a defendant found guilty of conspiracy, without more, is automatically eligible for a sentence of death would undermine the

**18.** *See* Government's May 10, 2002 Opposition to Defendant's Motion to Strike at 7–8, 23. Specifically, the Government contends that the defendant's "participation in the conspiracy" includes attending training camps in Afghanistan, traveling to the United States, enrolling in and attending flight schools in the United States, purchasing weapons, joining a gym, purchasing flight deck videos, receiving money from Ramzi Binalshibh and lying to federal authorities. (Second Superseding Indictment, Count I, Overt Acts ¶¶ 13, 32, 41–44, 46, 49, 53, 58, 63–66 and 68–72). The

Government concedes that, other than his alleged lies to federal authorities, the "other overt acts committed by the defendant may not have directly contributed to" the deaths on September 11, 2001. *See* Government's May 10, 2002 Opposition to Defendant's Motion to Strike at 22.

**19.** Despite standby counsel's contrary contention, the Court in *Tison* found only that major participation in an underlying felony is sufficient, but not necessary, to render a defendant death eligible.

narrowing function which the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591–3598, is constitutionally required to serve by drawing no distinction between those found guilty of conspiracy and those found eligible for a sentence of death.[20] *See Jones v. United States,* 527 U.S. 373, 381, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); *Buchanan v. Angelone,* 522 U.S. 269, 275, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998); *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

■ As detailed in the Court's Memorandum Opinions of March 10 and August 29, 2003, the defense has made sufficient showings that the detainees at issue could offer testimony which would undermine the Government's contention that the defendant intentionally "participated in an act" or "engaged in an act of violence" that directly resulted in thousands of deaths on September 11, 2001. The defense has also adequately demonstrated that the detainees could provide testimony supporting the contention that Moussaoui may have been only a minor participant in the charged offenses. *See* 18 U.S.C. §§ 3591(a) and 3592(a).[21] Considering the broad nature of the charged conspiracies as described by the United States in its recent pleadings in this case, it simply cannot be the case that Moussaoui, a remote or minor participant

in "al Qaeda's war against the United States," can lawfully be sentenced to death for the actions of other members of al Qaeda, who perpetrated the September 11 attacks, without any evidence that the defendant, himself, had any direct involvement in, or knowledge of, the planning or execution of those attacks. To the extent that the prosecution believes that Moussaoui possessed knowledge of the attacks sufficient to render his statements to law enforcement at the time of his arrest "acts" which directly resulted in death, the Government's refusal to comply with this Court's Orders of January 31 and August 29, 2003 prevents the defendant from offering trial testimony that could undermine the Government's argument.

■ Because "the penalty of death is qualitatively different from a sentence of imprisonment, however long," *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *see also Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), "there is a corresponding need for reliability in the determination that death is the appropriate punishment in a specific case." *Id.* To that end, in a capital prosecution, the fact finder must not be precluded from considering any information concerning the de-

---

**20.** Because the terms "act" and "offense" must be given independent meaning within the context of the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591, *see United States v. Alaska,* 521 U.S. 1, 59, 117 S.Ct. 1888, 138 L.Ed.2d 231 (1997); *Salomon Forex, Inc. v. Tauber,* 8 F.3d 966, 975 (4th Cir.1993), the Government's argument that the defendant's mere participation in the conspiracies exposes him to the death penalty erroneously conflates the concepts of conspiracy liability and death eligibility. Although the Government cites to numerous cases in which remote participants in a charged conspiracy have been found guilty of conspiracy and, in some cases, liable for the actions of their co-conspirators, (Government's May 10, 2002 Response to Defendant's Motion to Strike),

the Government has not pointed to, and the Court has been unable to locate, a single case in which a remote or minor participant in an alleged conspiracy, who is charged only with conspiracy, was sentenced to death. Notably, in *United States v. Bin Laden,* 109 F.Supp.2d 211, 213 (S.D.N.Y.2000), which concerned the 1998 bombings of the United States embassies in Nairobi, Kenya and Dar es Salaam, Tanzania, the defendants who were charged only with conspiracy did not face the death penalty. The embassy bombings resulted in more than two hundred deaths.

**21.** Minor participation in the offense is among the enumerated mitigating factors identified in the FDPA. 18 U.S.C. § 3592(a)(3).

fendant's role in the charged offenses which may support the imposition of a sentence other than death. *See Lockett*, 438 U.S. at 604, 608, 98 S.Ct. 2954; *see also* 18 U.S.C. §§ 3592(a) and 3593. That the United States has deprived Moussaoui of any opportunity to present critical testimony from the detainees at issue in defense of his life requires, as a sanction, the elimination of the death penalty as a possible sentence. The defendant remains exposed to possible sentences of life imprisonment.

■ Particularly in light of the Government's concessions regarding the nature and scope of the charged conspiracies and the marginal relevance of the allegations concerning the September 11 attacks to the charges against Moussaoui, as an additional sanction, the Government will be foreclosed at trial from making any argument, or offering any evidence, suggesting that the defendant had any involvement in, or knowledge of, the September 11 attacks.[22] It would simply be unfair to require Moussaoui to defend against such prejudicial accusations while being denied the ability to present testimony from witnesses who could assist him in contradicting those accusations.

With the death penalty removed from this case, and the prosecution prohibited from arguing that Moussaoui had any knowledge of, or involvement in, the planning or execution of the September 11 attacks, the Court is no longer satisfied that testimony from the detainees at issue would be material to the defense. Mous-

saoui's constitutional right to a fair trial, therefore, is not offended by the Government's refusal to comply with the Court's Orders of January 31 and August 29, 2003.

### III. *Conclusion*

For the reasons stated herein, the Court finds that the interests of justice do not warrant the complete dismissal of this prosecution. Rather, with the sanctions described in this Memorandum Opinion, the prosecution can go forward. Therefore, the defense motions for sanctions will be denied to the extent that they seek dismissal of the Indictment. An appropriate order will issue with this Memorandum Opinion.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel for the United States, standby defense counsel, and the Court Security Officer, who must submit this Memorandum Opinion for an expedited classification review to ensure that it is appropriate for disclosure to the *pro se* defendant and placement in the public record.

---

22. Because there will not be a penalty phase, and the events of September 11 will not be the focus of this case, the Court finds that the probative value of any cockpit voice recordings, video footage of the collapse of the World Trade Center towers and photographs of the victims of the September 11 attacks would be substantially outweighed by the danger of unfair prejudice to the defendant, *see* Fed.R.Evid. 403. The Government's pending motions concerning such evidence will, accordingly, be denied by an appropriate order issued with this Memorandum Opinion.